[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-10101

_____

D. C. Docket No. 3:08-cv-00063-WS-CJK

DANIEL R. THOMPSON,

Plaintiff-Appellant,,

versus

SHERIFF, PINELLAS COUNTY FL,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(October 18, 2013)

Before PRYOR and ANDERSON, Circuit Judges, and RESTANI,* Judge.

_____

* Honorable Jane A. Restani, United States Court of International Trade Judge, sitting by
designation.

PER CURIAM:

In this case, plaintiff Daniel Thompson has sued Sheriff Jim Coats in his official capacity as Sheriff of the Pinellas County Sheriff's Office (the "Sheriff"). Previous litigation has established that Richard Farnham, then a deputy sheriff in the Pinellas County Sheriff's Office, violated the constitutional rights of plaintiff when he tased plaintiff in the course of arresting him. For purposes of this appeal, the Sheriff does not contest the fact of that violation of constitutional rights. The incident occurred in the aftermath of Hurricane Ivan at which time there was concern about looters. The incident occurred in Santa Rosa County, and Deputy Farnham had been sent to assist the Santa Rosa County Sheriff's Department. However, the law is well established that a sheriff in his official capacity (i.e, the county) may not be subjected to liability predicated upon a theory of <u>respondeat superior</u>. The Supreme Court has established a high threshold for plaintiffs in cases like this. <u>See</u> <u>Bd. of County Com'rs of Bryan County v. Brown</u>, 520 U.S. 397, 405, 117 S. Ct. 1382, 1389 ("Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."). The district court found no liability in this case and entered summary judgment in favor of the

2

Sheriff.  Plaintiff appeals.

In this appeal, plaintiff seeks to impose official capacity liability upon the Sheriff of Pinellas County on the basis of one of three theories.  First, plaintiff argues that Sheriff Coats knew or should have known of a need to supervise his deputies with respect to the use of excessive force but was deliberately indifferent to that need with the predictable consequence that his deputies would use excessive force, thus violating the constitutional rights of arrestees.  Second, plaintiff also seeks to impose liability pursuant to the theory that Sheriff Coats ratified Farnham's unconstitutional conduct.  Third, plaintiff seeks to impose liability under the theory that his constitutional injuries were caused by former Sheriff Everett Rice's decision to hire Farnham despite red flags in Farnham's background.  We turn initially to plaintiff's first theory.

## I.    PLAINTIFF'S FAILURE TO SUPERVISE THEORY

Plaintiff first asserts that three citizen complaints against Farnham before the September 20, 2004, incident at issue here placed the Sheriff on notice that deputies were engaging in conduct constituting an excessive use of force, and thus on notice that, in the absence of additional supervision, his deputies would engage in the use of excessive force and deprive citizens of their constitutional rights.  As the Supreme Court indicated in Connick v. Thompson, __ U.S. ___, 131 S.Ct. 1350 (2011):

3

> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to [supervise].[1] … Policymakers' continued adherence to an approach they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability.

Id. at ___, 131 S. Ct. at 1360 (internal citations and quotations omitted). Plaintiff in this case argues that the three citizen complaints against Farnham constitutes such a "pattern of similar constitutional violations" that the Sheriff was placed on notice that his deputies were engaging in the use of excessive force, and that the Sheriff's failure to provide additional supervision evidenced a deliberate indifference to the likely consequence of deprivation of constitutional rights of arrestees.

We agree with the district court that plaintiff's evidence falls far short of the requisite proof. We note that Sheriff Coats has 900 deputies and that plaintiff has adduced evidence only with respect to Deputy Farnham. We also note that plaintiff has not challenged the existence and efficacy of the Sheriff's written policies with respect to the use of force. And we note that the record contains ample evidence of adequate written policies with respect to the use of force, as well as evidence of satisfactory procedures and means to monitor use of force incidents by deputies.[2]

---

[1] The rule suggested by the Supreme Court for purposes of failure to train also applies to the failure to supervise. See Gold v. City of Miami, 151 F.3d 1346, 1350–51 (11th Cir. 1998).

[2] Plaintiff suggests that the computerized Personnel Intervention System was deficient in that it experienced operational challenges during 2004, and plaintiff argues that the

4

The record also reveals that the deputies receive training, and that Farnham received training, with respect to the appropriate use of the taser.

Even if we assume arguendo that the "ordinarily necessary" pattern of similar constitutional violations might be demonstrated under some circumstances by a pattern of violations on the part of a single deputy, notwithstanding that he is one of many, and even if we assume arguendo that three previous violations by that deputy might under some circumstances be sufficient, we conclude that the three citizen complaints relied upon by plaintiff fall far short. We have carefully examined the record evidence with respect to each of these three. In each case, an investigation was conducted. In each case, relevant witnesses were interviewed. In each case, the investigation concluded that any complaint of wrong doing was unsubstantiated. We conclude that the investigation in each case was adequate; a perfect investigation is not necessary. We are satisfied that nothing in the investigation files, and nothing related to these three citizen complaints, indicates an obvious need for additional supervision. We cannot conclude that anything related to these three citizen complaints could put the Sheriff on notice of a need for additional supervision such that his failure to provide same would constitute deliberate

---

Sheriff's Office was unable to monitor its deputies to identify officers at risk of using excessive force. However, the record indicates that the Sheriff's Office had a manual system as a back-up. In any event, the record evidence falls far short of indicating any deficiency in the system sufficiently obvious to place the Sheriff on notice that additional supervision was necessary to prevent the likely use of excessive force and deprivation of constitutional rights.

5

indifference.[3]

Plaintiff also relies upon several citizen complaints which occurred after the September 20, 2004, incident at issue in this case.  We conclude that such post-incident complaints could not have put the Sheriff on notice of a need for supervision as of September 20, 2004.  See Connick, ___ U.S. at ___, 131 S. Ct. at 1360 n.7 ("[C]ontemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice to the city and the opportunity to conform to constitutional dictates.") (internal citations and quotations omitted).  Moreover, each of these complaints was also investigated, relevant witnesses were interviewed, and the complaint was found to be unsubstantiated.  We have carefully reviewed the record with respect to each of these, and we cannot conclude either that the investigation was inadequate or that the finding was not supported by the evidence.

We cannot conclude that the district court erred in rejecting plaintiff's failure to supervise theory.

---

[3]    We note incidentally that we seriously doubt that the Peterson incident even involved a use of force comparable to the tasing at issue in this case.  The complaint by Peterson was that Officer Farnham had roughly handcuffed her and that the handcuffs were too tight.  See Connick, ___ U.S. at ___, 131 S. Ct. at 1360 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.") (emphasis added).  We harbor similar doubts about whether the Blau complaint involved a comparable use of force.  There, the complaint was that Officer Farnham drove his patrol car too close to the motorcycles on which complainant and his companion were riding, and that the officer placed his hand on his gun during his conversation with complainant.

## II.    PLAINTIFF'S RATIFICATION THEORY

Plaintiff first argues that post-incident nomination of Deputy Farnham for an award constitutes ratification of Farnham's unconstitutional acts.  We summarily reject this argument.  The nomination was made by Sgt. Luben, not by Sheriff Coats, the policymaker.  Even if Sheriff Coats approved the nomination, we readily conclude that this could not constitute ratification.  The nomination occurred on December 18, 2004, at which time the Sheriff was not even aware of allegations of wrongdoing on the part of Farnham.

Plaintiff also argues that the failure to discipline Deputy Farnham constitutes ratification.  On the instant facts, we disagree. As noted above, there is no evidence of a "persistent failure to take disciplinary action," which we have held can constitute ratification.  See Fundiller v. City of Cooper City, 777 F.2d 1436, 1443 (11th Cir. 1985).  Obviously, there could be no ratification in the absence of knowledge on the part of Sheriff Coats that Farnham had violated plaintiff's constitutional rights by using excessive force.  The record indicates that the Sheriff did not even know of allegations of excessive force until February 2005 when he was alerted to the FBI investigation.  At that time, his Administrative Investigative Division ("AID") began an investigation.  Plaintiff had not filed a complaint with Pinellas County; rather, plaintiff only informally complained to Santa Rosa County, where the incident occurred.

7

The Sheriff's AID obtained the investigation file compiled by Santa Rosa County. It reflected interviews with what appeared to be all relevant witnesses, and included written statements of many. None of the statements except that of plaintiff and his wife even hinted of improper action by Deputy Farnham. On the other hand, Farnham's version of the events was corroborated by the only other deputy who could have witnessed the tasing. His statement said: "Deputy Farnham approached [Thompson] who was refusing to comply with Deputy Farnham's commands. Deputy Farnham deployed his taser at [Thompson] to gain compliance." Another deputy reported having spoken with Knowling (Thompson's companion who was arrested with him at the time). The deputy's account of what Knowling told him also is not inconsistent with Farnham's version. According to the deputy, Knowling told him that he and Thompson were "approached by two persons holding [a] flash light and claiming to be Sheriff's deputies"; Knowling described them as ordering Thompson and him to drop their weapons, which they refused to do initially because they did not believe the two men were deputies. Another deputy stated that when he arrived at the scene he observed:

> two white males, one 'proned out' and the other on his knees. The suspect on his knees went down to the ground. A white female standing in the yard behind the suspects were screaming he is a cop. The suspect later identified as Thompson had a handgun that he laid down in front of them when he went all the way down to the prone position.

The statement of plaintiff's wife also indicated a time that she could see that the

8

two men approaching them with flashlights were deputies, and that her husband did not at this time immediately lie down on the ground and drop his gun as had been ordered, but rather "raised his hands and said 'I am the homeowner – I called you.'" In short, it is clear from the investigation file that all of the officers present thought that plaintiff and his friend, Knowling, were armed and were suspected looters who were not complying immediately with the orders of the deputies. The Sheriff also received a copy of a polygraph which was not indicative of deception when Farnham indicated that he deployed his taser because Thompson would not follow his lawful commands. Although asked for a statement, Thompson indicated that he was only going to deal with the FBI. The AID investigation concluded that no violations had occurred.

Although the Sheriff did not take disciplinary action until later, when Farnham was indicted, we cannot conclude this failure could constitute ratification by the Sheriff of the unconstitutional acts of Deputy Farnham. The record does not establish that the Sheriff knew that unconstitutional acts had occurred, nor can we conclude that it was obvious from the facts available to the Sheriff at the time that unconstitutional acts had in fact occurred.[4]

---

[4]     Plaintiff also argues that the Sheriff's Office assisted in Farnham's defense during his criminal trial. However, a Florida statute requires that an employing agency shall provide an attorney for any officer in the criminal action commenced against the officer under the circumstances that reasonably appeared at the time to the Sheriff. Whatever the facts later developed at Farnham's trial may have shown, nothing in the facts available to

9

We cannot conclude that the district court erred in granting summary judgment that the Sheriff had not ratified Deputy Farnham's unconstitutional act.[5]

### III.    PLAINTIFF'S THEORY OF A DELIBERATELY INDIFFERENT HIRING DECISION

We summarily reject plaintiff's argument in this regard.  We conclude that Bd. of County Com'rs of Byran County v. Brown, 520 U.S. 397, 117 S.Ct. 1382 (1997), forecloses plaintiff's position.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.[6]

_____

the Sheriff at the time indicated that Deputy Farnham's actions were  "manifestly indefensible."  Coon v. Ledbetter, 780 F.2d 1158, 1162 (5th Cir. 1986).

[5]    Plaintiff also suggests that the response of the Sheriff's Office to this incident, and the failure to discipline Farnham, somehow constituted evidence establishing liability under plaintiff's failure to supervise theory.  However, plaintiff fails to explain how the September 20, 2004, single incident could have placed the Sheriff on notice beforehand of a need for additional supervision.  See Connick, ___ U.S. at ___, 131 S. Ct. at 1360–61 n.7 ("[C]ontemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice to the city and the opportunity to conform to constitutional dictates.") (internal citations and quotations omitted).  Plaintiff's reliance on that single incident also falls far short of that "narrow range of circumstances" that the Supreme Court has suggested might rarely "reflect the city's deliberate indifference to the highly predictable consequence … [of] violations of constitutional rights." Id. at ___, 131 S.Ct. at 1361 (internal citations and quotations omitted).  Nothing about the September 20, 2004, incident indicated that it would have been patently obvious to the Sheriff beforehand that, in the absence of additional supervision, Deputy Farnham would be highly likely to tase improperly or otherwise use excessive force.  Indeed, Farnham had received training with respect to the use of the taser.

[6]    We cannot conclude that the district court erred with respect to its handling of Dr. Lyman's affidavit.  Arguments raised on appeal by appellant but not expressly addressed in this opinion are rejected without need for further discussion.